Manfred P. Muecke (SBN 222893)
**Manfred APC**
600 W Broadway Ste 700
San Diego CA 92101
Tel: (619) 550-4005
Fax: (619) 550-4006
mmuecke@manfredapc.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Foreman, on Behalf of Himself and All Others Similarly Situated, | |
| Plaintiff, | Case No. **'25CV0314 TWR KSC** |
| vs. | **CLASS ACTION COMPLAINT** |
| THE COLGATE PALMOLIVE COMPANY and TOM'S OF MAINE, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff William Foreman ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against The Colgate Palmolive Company and Tom's of Maine ("Defendants").  Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant.

2.    This Court has personal jurisdiction over Defendants. Defendants have sufficient minimum contacts with the state of California and purposefully availed themselves, and continues to avail themselves, of the jurisdiction of this California through the privilege of conducting its business ventures in the state of California, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

3.    Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendants do business throughout this district, and Plaintiff made his

purchase of Defendants' Tom's of Maine toothpaste (the "Product") in San Diego, California from a retail store in this district and his Tom's of Maine toothpaste purchased was delivered to, and used, in this district.

## **PARTIES**

4.    Plaintiff is a natural person and a citizen of San Diego County, California. Plaintiff purchased the Tom's of Maine toothpaste from a local retailer. Before his purchase, Plaintiff saw and reviewed Defendants' advertising claims on the packaging and labeling itself, and he made his purchase of the toothpaste in reliance thereon. Plaintiff specifically relied upon representations made by Defendant. Plaintiff did not receive the promised benefits or the total value of his purchase. Plaintiff would purchase the product again if he was assured the product was not adulterated.

5.    Defendant Colgate Palmolive is a publicly traded company whose principal place of business is located in New York.

6.    Defendant Tom's of Maine is a U.S. manufacturing company whose principal place of business is located in Kennebunk, Maine. It is a majority-owned subsidiary of Colgate Palmolive.

7.    Plaintiff reserves the right to amend his Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

**FACTUAL ALLEGATIONS**

8.     Tom's of Maine (the "Tom's" or the "company") was founded by Tom and Kate Chappell in 1970 with a $5,000 loan, eventually growing into a $100 million business. The company is based in Kennebunk, Maine, and is a subsidiary of the multinational conglomerate Colgate-Palmolive, as of 2006. Tom's has approximately 120 employees. The company also employs factories elsewhere in the US and Canada via contract to produce some of their products.

9.     Tom's products are sourced and derived from nature, with formulas free of artificial flavors, fragrances, colors, sweeteners, and preservatives. The products are not tested on animals, and the company claims that its ingredient processing supports human and environmental health. While most of the company's products are vegan, some products contain propolis and/or beeswax sourced from bees.

10.     In November 2024, the United States Food & Drug Administration ("FDA") issued a warning to the company after it found disease-causing bacteria and mold-like powdery substances in Tom's of Maine products and facilities. (*See* FDA Letter attached as **Exhibit 1**) At least three species of harmful bacteria were found. The FDA also stated that Tom's had received hundreds of consumer complaints, but had not investigated them. *Id.*, pg. 4. The warning letter mandates that Tom's must submit multiple documents, including assessments and remediation plans for its operations, contamination hazards, testing methods, and cleaning procedures.

11.    The company told CBS News that it is working with the FDA to resolve the issues the agency found in the Maine plant.

12.    Tom's sells personal care products, such as toothpaste, mouthwash, lip balms and fragrances using "naturally sourced and naturally derived ingredients," according to its website. It is owned by Colgate-Palmolive, and its goods are sold in major retailers such as Whole Foods, Target, Walmart, and Kroger.

13.    The FDA noted in its letter despite the results of microbial tests it conducted, Tom's continued to distribute merchandise based on the test results of final products, but did not investigate the quality of water used in the process.

14.    Tom's responded to the FDA by stating it is retrospectively looking into the incidents, and that the detection of Paracoccus yeei was due to a lab error. However, the agency said there is no evidence of that.

15.    Pseudomonas aeruginosa — which can cause infections in the blood and lungs, according to the Centers for Disease Control and Prevention — was also recovered in multiple water samples from June 2021 to October 2022. That water was used to manufacture Tom's Simply White clean mint paste, and for the final rinse of numerous equipment cleaning processes, the letter said.

16.    The bacteria Ralstonia insidiosa was also recovered from water points of use. The FDA found that batches manufactured after these incidents were released based on the microbial testing of the finished over-the-counter product despite the quality of the water used as a component or to clean the equipment. The FDA warned

Tom's investigation concluded, without sufficient justification, that the growth was due to sample contamination.

17.    An FDA investigator also observed a "black mold-like substance" at the base of a hose reel and behind a water storage tank at the facility, which was within a foot away from equipment used for toothpaste production.

18.    The FDA also found that Tom's failed to investigate hundreds of product complaints regarding odor, color, and taste because they did not indicate a trend. According to the FDA, Tom's responded by saying it handles complaints with a "risk-based approach," and that individual complaints are not enough to deem a product inadequate.

19.    The FDA's letter also stated "Water is a major ingredient in many of your OTC drug products. It is essential that you employ a water system that is robustly designed, and that you effectively control, maintain, and monitor the system to ensure it consistently produces water suitable for pharmaceutical use."

## CLASS ACTION ALLEGATIONS

20.    Class Definition: Plaintiff brings this action on behalf of himself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

**National Class:** All persons in the United States who purchased the Products during the fullest period of law.

In the alternative, Plaintiff brings this action on behalf of the following State

CLASS ACTION COMPLAINT

class.

**California Sub-Class**: All persons in the State of California who purchased the Products during the fullest period of law.

21.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

22.    **Numerosity and Ascertainability**: Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

23.    **Typicality and Adequacy**: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

24.    **Commonality**: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting

only individual Class members:

a. whether Defendants committed the conduct alleged herein;

b. whether Defendants' conduct constitutes the violations of laws alleged herein;

c. whether Defendants' labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d. whether the Tom's of Maine toothpaste is adulterated and/or misbranded under the California Health & Safety Code or federal law;

e. whether Defendants knew or should have known that the representations were false or misleading;

f. whether Defendants knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Tom's of Maine toothpaste;

g. whether Defendants' representations, concealments and non-disclosures concerning the Tom's of Maine   likely to deceive consumers;

h. whether Defendants' representations, concealments and non-disclosures concerning the Tom's of Maine toothpaste violate California consumer laws and/or the common law;

i. whether Defendants should be permanently enjoined from making the claims at issue; and

j. whether Plaintiff and the Class are entitled to restitution and damages.

25. **Predominance and Superiority**: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents the possibility of inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendants committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b. when Defendants' liability has been adjudicated, claims of all Class members can be determined by the Court;

c. this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d. without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct.

26.     **Manageability**: The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

27.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

## COUNT I

**Violation of the Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of the California Subclass)**

CLASS ACTION COMPLAINT

28.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27 of this complaint.

29.     The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

30.     The unlawful prong of the UCL prohibits any unlawful business practices.

31.     Defendants are a "business" as defined under the UCL.

32.     Defendant's conduct was unlawful, in violation of the UCL, because Defendant's conduct described in this complaint constitutes a violation of California's False Advertising Law and the California Consumers Legal Remedies Act ("CLRA") (as alleged in this Complaint) and all constitute separate and cumulative violations of the unlawful prong of the UCL.

33.     The fraudulent prong of the UCL prohibits business practices that are likely to deceive the public.

34.     Defendant's practice of not disclosing the presence of Listeria monocytogenes rendered the Products less valuable, and then misrepresenting the contamination status at the expense of its competitors, is a practice that is likely to deceive members of the public.

35.     Defendants' conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer:

- Defendants promoted and sold Products with potential contamination, despite knowing that customers do not expect Products to be contaminated;

- Defendants failed to disclose that the Products contained Pseudomonas aeruginosa and other harmful bacteria that could and would cause harm to Plaintiff and the class;

- Defendants represented through advertising, product packaging, press releases, and other sources that the Products possessed particular qualities that were inconsistent with Defendant's actual knowledge of the Products;

- Defendants misrepresented that the Products are safe for use and doesn't list that the Products contain Pseudomonas aeruginosa and other harmful bacteria.

36.     Defendants had ample means and opportunities to alert Plaintiff and Class Members of the true nature of its Products, including on in its advertisements of the Products; on the external packaging of the Products; and in its own and its partners' online purchase portals and storefront displays.

37.     Defendants uniformly failed to disclose that the Products contained Pseudomonas aeruginosa and other harmful bacteria. Had Defendants disclosed this information, Plaintiff and Class Members would not have purchased the Products, or would not have purchased the Products at the prices they did.

38.     Defendants were under a duty to disclose the condition of the Products because of its exclusive knowledge, because the omissions and misrepresentations resulted in material and unreasonable damage to the Products, and because customers

CLASS ACTION COMPLAINT

were left uncertain about the best course of action with respect to their defective and now useless Products.

39.    Plaintiff and Class Members were unaware of Defendants' practices until they had already purchased and, in many cases, consumed or discarded the products. Had Defendants disclosed the true nature of the Products on the label, Plaintiff and Class Members would have been aware of the true nature of the Products and would not have purchased the Products, would have paid substantially less for the Products, or would have returned the Products for a refund.

40.    The unfair prong of UCL prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

41.    Defendants repeatedly and misleadingly, inaccurately, and deceptively advertised and marketed its Products to consumers—and Defendants continues to do so. These practices offend an established public policy or are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

42.    Defendants also acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner with respect to Plaintiff and the Class Members by engaging in unfair and anticompetitive business practices that harmed consumer welfare. Defendants engaged in unfair business practices and acts in at least the following respects:

- Defendant promoted and sold Products with potential contamination, despite

knowing that customers do not expect Products to be contaminated;

- Defendant failed to disclose that the Products contained Pseudomonas aeruginosa and other harmful bacteria that could and would cause harm to Plaintiff and the class;

- Defendant represented through advertising, product packaging, press releases, and other sources that the Products possessed particular qualities that were inconsistent with Defendant's actual knowledge of the Products;

- Defendant misrepresented that the Products are safe for use and doesn't list that the Products contain Pseudomonas aeruginosa and other harmful bacteria.

43.    These are practices and uniform courses of conduct that offend an established public policy or that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

44.    Any legitimate purpose or benefit of Defendants' conduct is substantially outweighed by the harm to consumers, competition, and the general public. There is no legitimate reason why Defendants should be allowed to sell the Products without providing its customers the opportunity to make fully informed purchases. There is no legitimate reason why Defendants should be allowed or deceive their customers about whether the Products are contaminated with Pseudomonas aeruginosa and other harmful bacteria.

45.    Plaintiff was left with uncertainty as to the best course of action as the Defendants have not recalled the Products.  Unless the Court enjoins further unlawful

acts by Defendant, Plaintiff and Class Members face uncertainty as to which of these choices would allow them to recover anything or minimize their damages. Plaintiff is also unsure whether purchasing further Products or similar products in the future would result in further loss.

46.    Through its unlawful, unfair, and fraudulent conduct, Defendants acquired Plaintiff's money directly and as passed on by Defendants' authorized resellers (e.g., Whole Foods, Target, Walmart, and other grocery stores around the country). Plaintiff and Class Members suffered injury in fact, including lost money or property, as a result of Defendants' unlawful, unfair, and fraudulent conduct.

47.    Absent Defendants' unlawful, unfair and fraudulent conduct, Plaintiff and Class Members would not have purchased the Products, would have paid substantially less for them, or would have returned them for a refund because Defendant omitted material information that it was under a duty to disclose and on which Plaintiff and the Class Members would have relied.

48.    Plaintiff and Class Members accordingly seek appropriate relief, including: (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin Defendants from continuing its unfair, unlawful, and fraudulent practices. Plaintiff also respectfully seeks reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure Section 1021.5.

**<u>COUNT II</u>**
**California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On behalf of the California Subclass)**

49.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27 of this complaint.

50.    Defendants violated Cal. Bus. & Prof. Code section 17500 by using false and misleading statements, and material omissions, to promote the sale of the Products and otherwise "concerning any circumstance or matter of fact connected with the proposed performance or disposition of services."

51.    The Products do not possess the level of quality or value that Defendants promised.

52.    Defendants made uniform representations and material omissions that communicated to Plaintiff and Class Members that the Products were safe to consume and did not contain Pseudomonas aeruginosa and other harmful bacteria, when that was not in fact true.

53.    Had Plaintiff and Class Members known that the Products contained Pseudomonas aeruginosa and other harmful bacteria, they would not have purchased the Products in the first place.

54.    Defendants omitted the material fact that the purportedly safe Products contained Pseudomonas aeruginosa and other harmful bacteria. Defendants had a duty to disclose the truthful nature of the Products.

55.    Defendants knew, or in the exercise of reasonable diligence should have known, that its representations and omissions were false and misleading at the time it made them. Defendants deliberately provided false representations and omissions to

prevent customers from learning the true nature of the Products and further inducing its customers to purchase new Products.

56.    Defendant's false and misleading advertising statements deceived the general public.

57.    As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and Class Members have suffered injury-in-fact and have lost money and property.

58.    Plaintiff and Class Members reasonably relied to their detriment on Defendant's material misrepresentations and omissions regarding its Products.

59.    Plaintiff and Class Members were left with uncertainty as to the best course of action. Unless the Court enjoins further unlawful acts by Defendants, Plaintiff and Class Members face uncertainty as to what would minimize their damage.

60.    Plaintiff and Class Members seek to enjoin, under Bus. & Prof. Code section 17535, the violations described herein and to require Defendants to issue a recall and refund.

61.    Defendants' false advertising will continue to harm consumers unless and until it is enjoined.

62.    Plaintiff and Class Members therefore seek an order requiring Defendants to cease their false advertising and unlawful practices, provide full restitution of all monies Defendants derived from its false advertising, interest at the

highest rate allowable by law, and for an award of reasonable attorney's fees and costs under applicable law, including Code of Civil Procedure section 1021.5.

## COUNT III
### Violation of the California Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1770(a)(5), *et seq*.
### (On behalf of the California Subclass)

63.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27 of this complaint.

64.     Cal. Civ. Code section 1770(a)(5) of the CLRA prohibits representing that a seller's goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

65.     Cal. Civ. Code section 1770(a)(7) of the CLRA prohibits representing that its goods or services are of a particular standard, quality, or grade, if they are of another.

66.     Cal. Civ. Code section 1770(a)(9) of the CLRA prohibits advertising goods and services with the intent not to sell them as advertised.

67.     Defendants violated Cal. Civ. Code sections 1770(a)(5) and 1770(a)(7) of the CLRA by representing that the Products were safe for consumption when, at the point of sale, Defendants knew or should have known that the Products contained Pseudomonas aeruginosa and other harmful bacteria.

68.     Defendants violated Cal. Civ. Code section 1770(a)(9) of the CLRA when it advertised the Products as not containing Pseudomonas aeruginosa and other harmful bacteria with the intent not to sell them as advertised.

18

69.     As a result of these violations of certain sections of the CLRA, Plaintiff incurred damages in the form of purchasing the Products at issue that lost all value as a result of contamination with Pseudomonas aeruginosa and other harmful bacteria.

70.     As a result of this violation, Plaintiff and Class Members have been deprived of the safely usable oral care Products which Defendants represented they were purchasing. Had Plaintiff and Class Members known the true nature of the Products, Plaintiff and Class Members would have paid less for the Products, or would not have purchased the Products at all.

71.     Under Cal Civ. Code section 1781(a), any consumer who suffers damage as a result of a violation of this section may bring a class action on behalf of himself and all those similarly situated.

72.     In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class seek injunctive and equitable relief for Defendants' CLRA violations. Concurrent with the filing of this Complaint, Plaintiff has mailed an appropriate demand letter as Cal required under California Civil Code § 1782(a). If Defendants fail to take corrective actions within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for claims for actual, punitive, and statutory damages, as appropriate.

73.     Plaintiff has no adequate remedy at law because he is currently unable to determine whether he will be able to use the Products in the future, and he is uncertain whether Defendants will correct the issue or provide other remedies. Unless the Court

enjoins further unlawful acts by Defendants, Plaintiff and Class Members face uncertainty as to which of these choices would minimize their damage. Defendants benefitted substantially from Plaintiff's purchases because Defendants received the majority of the revenue from the purchases.

74.    Therefore, Plaintiff and the Class are entitled to injunctive relief and all other relief that the court deems proper, including costs and attorney's fees, under Cal. Civ. Code section 1780.

## COUNT IV
### Fraud By Omission
### (On behalf of the Nationwide Class or,
### in the alternative, the California Subclass)

75.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27 of this complaint.

76.    Defendants failed to disclose material facts about the nature of the Products. Specifically, Defendants failed to disclose material facts about the presence of Pseudomonas aeruginosa and other harmful bacteria in the Products.

77.    Because the technology that could detect Pseudomonas aeruginosa and other harmful bacteria was not available to the public and Defendants controlled the manufacturing and distribution of the Products, Plaintiff and Class Members had no reasonable means of knowing that Defendants' representations concerning the Products were incomplete, false, and misleading. Plaintiff and Class Members did not and reasonably could not have discovered Defendants' deceit before they purchased the Products.

CLASS ACTION COMPLAINT

78.    Defendants made material omissions regarding its business practice of selling Products contaminated with Pseudomonas aeruginosa and other harmful bacteria to coerce Plaintiff and Class members to buy the Products that are sold for substantial and unjustified premiums considering their true condition. Had Plaintiff and Class members known that Defendants employed such tactics, they would not have purchased the Products in the first place, or would not have purchased it at the price they did.

79.    Defendants had a duty to disclose the true nature of the Products to Plaintiff, Class Members, and the public because Defendants' conduct with respect to the Products results in material and unreasonable damage to the property of Plaintiff and Class Members and Defendants possessed exclusive knowledge of it.

80.    Defendants knew, or in the exercise of reasonable diligence should have known, that their representations and omissions were false and misleading at the time it made them. Defendants deliberately provided false representations and omissions to prevent customers from learning the contaminated nature of the Products and further inducing its customers to purchase new Products.

81.    The facts about the Products that Defendants suppressed and omitted were material to a reasonable objective consumer, and Plaintiff and Class Members were unaware of them until they had already purchased the Products. Had Defendants disclosed the true nature of the Products on the labels or elsewhere, Plaintiff and Class

Members would have been aware of it, and would not have purchased the Products, would have paid substantially less for it, or would have returned it for a refund.

82.    When deciding to purchase the Products, Plaintiff and Class Members reasonably relied to their detriment upon Defendants' material omissions regarding the Products.

83.    Plaintiff and Class Members sustained damages as a direct and proximate result of Defendants' deceit and fraudulent concealment. Among other damage, Plaintiff and Class Members did not receive the value of the premium price they paid for the Products.

84.    Defendants' fraudulent omission was malicious, oppressive, deliberate, intended to defraud Plaintiff and Class Members and enrich Defendants, and in reckless disregard of Plaintiff's and Class Members' rights, interests, and well-being. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Classes defined above, prays for relief as follows:

A.    Determination that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, enter an order certifying the Classes defined above, and appointing Plaintiff's counsel as Class Counsel and Plaintiff as the representative of the Class;

B. Directing that Defendants bear the costs of any notice sent to the Class(es);

C. Declaring that Defendants must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendants to make full restitution to Plaintiff and the members of the Class(es);

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against Defendants to enjoin them from conducting their business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendants to fully and appropriately recall the Products;

G. Ordering a jury trial and damages according to proof;

H. Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

I. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

J. Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

K. Ordering such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable as of right.

DATED: February 11, 2025

Respectfully Submitted,

*s/Manfred Muecke*

**Manfred, APC**
Manfred Muecke (SBN: 222893)
600 W Broadway, Ste 700
San Diego, CA 92101-3370
mmuecke@manfredapc.com
Phone: 619-550-4005
Fax: 619-550-4006

CLASS ACTION COMPLAINT